United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REVEREND ANTHONY MAJORS, et al., | No. C 05-00061 CRB |
| Plaintiffs, | **MEMORANDUM AND ORDER** |
| v. | |
| CITY OF OAKLAND, et al., | |
| Defendants. | |

This lawsuit arises out of the Oakland Police Department's alleged failure to appropriately respond to calls from a church whose membership is predominately black. Now pending before this Court is the motion of the City of Oakland ("the City") for judgment on the pleadings. After carefully considering all the papers filed by the parties, and having had the benefit of oral argument, the City's motion is GRANTED in part and DENIED in part.

## BACKGROUND

**A. Factual allegations**

Plaintiff Rev. Anthony Majors ("Rev. Majors") is the pastor of Canaan Christian Covenant Missionary Baptist Church ("Canaan") in Oakland, California. Beginning in February 2003, Rev. Majors became embroiled in a dispute with certain Canaan members. Later that same year, the church members proceeded to disrupt Sunday services.

1    During a Sunday service in July 2003, for example, one individual defendant approached
2 Rev. Majors in the pulpit and "stuck a video camera in close proximity to Rev. Major's [sic]
3 face, pushed him hard, then dared him to do anything about it." Complaint
4 ¶ 32. Other disruptive behavior, including the lights being turned on and off during services,
5 the changing of the church's locks without giving Rev. Majors new keys, and vandalism of the
6 church including destruction of Rev. Majors personal materials and papers, occurred that same
7 month. Id.

8    Plaintiff reported this behavior, including the assault and battery, to the Oakland Police
9 Department who claimed that because it was a church matter, it was their policy and practice
10 just take a report. Complaint ¶ 33.

11    Defendants subsequently began to disrupt Sunday services more aggressively. For
12 example, on September 5, 2004, certain individual defendants commandeered the pulpit prior
13 to Rev. Majors's arrival. When Rev. Majors arrived, one defendant blocked the entrance,
14 pushed the door into Rev. Majors several times, and placed objects in front of the door to stop
15 him from entering. Several defendants attempted to prevent Rev. Majors from gaining access
16 to the pulpit. When the police arrived this time, defendant Claiborne told the police they had
17 no jurisdiction inside the church and should leave. The police again claimed that it was their
18 policy not to intervene in church matters. This type of behavior continued throughout
19 September, October, and November. Id. ¶ 43.

20    Not all of this aggression was directed at Rev. Majors. Certain individual defendants
21 surrounded Mrs. Majors's vehicle when she and her children arrived for church. After leaving
22 the vehicle, another defendant attempted to videotape both Mrs. Majors and her children,
23 frightening all of them. Another defendant grabbed one of the Majors's children by the
24 shoulder during the altercation. Subsequently, Mrs. Majors obtained a temporary restraining
25 order against individual defendant Dotson, who went on to violate the order several times. Id.

26    The Oakland Police Department has consistently failed to take any action against the
27 individual defendants. To date, the Department has not investigated plaintiffs' reported
28 complaints and has not referred the incidents to the Alameda County District Attorney's office

2

regarding their possible prosecution. Id. ¶¶ 20, 44. They have told plaintiffs that a member of their family would have to be seriously hurt before they could act, and their attitude is that Rev. Majors should resign and leave the area so that plaintiffs' calls to police will cease. Id. ¶ 44. Plaintiffs overheard one police officer state in response to a call that this was "just a bunch of black folk fighting." Id.

**B.  Procedural history**

Rev. Majors and his wife filed the present action against the City of Oakland, several individuals associated with Canaan ("individual defendants"), and the law firm of Fitzgerald Abbott & Beardsley ("FAB"). FAB and the individual defendants have settled.

The City has filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). It moves to dismiss all of the remaining claims: (1) 42 U.S.C. § 1981 for racial discrimination; (2) 42 U.S.C.§ 1983 for violation of substantive due process rights; (3) 42 U.S.C.§ 1983 for violation of procedural due process rights; (4) 42 U.S.C.§ 1983 for violation of equal protection rights; and (5) 42 U.S.C. § 1985(3) against all the defendants for a conspiracy to violate plaintiffs' civil rights.

**STANDARD OF REVIEW**

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990). As in a motion pursuant to Rule 12(b)(6), the Court must accept as true all the non-moving party's material allegations of fact. See Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir. 1993).

**DISCUSSION**

**A.  Section 1981 Claim (First Cause of Action)**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). Plaintiffs allege that the City failed

3

to respond to their calls for assistance on account of their race. The City moves for judgment on the pleadings on the ground that plaintiffs do not allege specific facts sufficient to give rise to a race discrimination claim. The City's argument, however, is premised on a misunderstanding of the appropriate pleading standard.

"In order to withstand a motion to dismiss for failure to state a claim, a § 1981 cause of action need only allege that plaintiff suffered discrimination . . . on the basis of race." Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1487 (9th Cir. 1995) (internal quotation marks and citation omitted). Plaintiffs are not required to plead specific facts; instead, they need only comply with Federal Rule of Civil Procedure 8(a)(2)--pleading a short and plain statement of the claim. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1124-25 (9th Cir. 2002); see also Maduka v. Sunrise Hosp., 375 F.3d 909, 912 (9th Cir. 2004) (holding that section 1981 lawsuits based on conclusory allegations of discrimination may survive a motion to dismiss).

The City's reliance on Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1239 (9th Cir. 1994) is misplaced. Kawaoka involved a motion for summary judgment; it does not hold that a plaintiff must allege specific facts to simply state a claim. The other cases cited by the City, see, e.g., Jones v. Comm. Redevelopment Agency of the City of Los Angeles, 733 F.2d 646 (9th Cir. 1984) and Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465 (9th Cir. 1991), were decided when the Ninth Circuit had a heightened pleading standard for civil rights claims involving discriminatory intent. That standard, however, was overruled by the Supreme Court in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), as the Ninth Circuit recognized in Galbraith.

As plaintiffs have alleged that the City failed to appropriately respond to their calls for assistance because the dispute involved a church whose members are predominately black, as as they have also alleged that the City had a policy of not responding to calls for assistance from black churches, plaintiffs have stated a section 1981 claim against the City.

**B.     Section 1983 Claims (Second Cause of Action)**

4

Plaintiffs also contend that the Oakland Police Department's refusal to intervene violated their rights under the First and Fourteenth Amendments to the U.S. Constitution, and accordingly claim that the City has violated 42 U.S.C. section 1983.

### 1. Substantive Due Process

The substantive component of the Fourteenth Amendment's Due Process Clause contains "no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989). Moreover, "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf . . . which is the 'deprivation of liberty' triggering the protections of the Due Process Clause." Id. at 200. In DeShaney, a father beat his young son, Joshua, after two years of varying oversight from Winnebago County officials. Id. at 192-93. Joshua and his mother filed a section 1983 action against the County and its Department of Social Services ("DSS"), claiming that they had deprived Joshua of his liberty without due process of law. Id. at 193. The Court held that the State had no constitutional obligation to protect Joshua from his father, id. at 197, reasoning that the purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protected them from each other." Id. at 196. The Court also found that the State did not create the danger to Joshua, since the danger occurred when Joshua was in his father's custody and because returning him to his father's custody "placed him in no worse position than that in which he would have been had [the State] not acted at all." Id. at 201. Consequently, a State is not constitutionally liable for injuries that "particular [state-provided] protective services" could have prevented. Id. at 196-97.

The same analysis applies here. The City's alleged failure to appropriately respond to plaintiffs' calls for assistance placed plaintiffs "in no worse position than that which [they] would have been had [the Police Department] not acted at all." DeShaney, 489 U.S. at 201. The City is not liable for injuries that it could have prevented. See id. at 196-97.

Law enforcement officials are sometimes liable under the "state-created danger" doctrine. See Kennedy v. City of Ridgefield, __F.3d__, 2005 WL 1475391 (9th Cir. June 23,

5

2005). Liability under this theory requires a two-part showing: (1) "that the officer's actions created or increased the danger facing him or her," and (2) "the state official acted with deliberate indifference to a known or obvious danger." Id. at *5.

Plaintiffs have not pleaded facts sufficient to state a claim under a "state-created danger" theory. The Oakland Police Department might have understood that taking no action break up the disruption in the church could have left plaintiffs in danger; however, their refus to act is not an affirmative creation of an already-existing danger. Plaintiffs have not alleged any actions or statements the police took to create or increase the threats or danger to them; instead, the police simply refused to act.

Viewing the allegations of the complaint in the light most favorable to plaintiffs, the Police Department did not violate plaintiffs' substantive due process rights as a matter of law As plaintiffs' opposition and supporting declarations demonstrate that they cannot amend the complaint to state a substantive due process claim, this claim is dismissed without leave to amend.

### 2. Procedural Due Process

Plaintiffs also claim that the City violated their procedural due process rights by failin to enforce a protective order against the individual defendants.

A claim of a procedural due process violation must be based on a "legitimate claim of entitlement" to a benefit. See Bd. of Regents v. Roth, 408 U.S. 564, 576-77 (1972). When a State has not explicitly created a "personal entitlement" to some benefit, there is no property interest and thus no procedural due process violation. See Town of Castle Rock, Colorado v Gonzales, 125 S.Ct. 2796, 2005 WL 1499788 *12 (2005). The legal question, then, is whether plaintiffs had a recognized property interest in, that is, legal entitlement to, enforcement of the protective orders they obtained against certain individual defendants.

In Castle Rock, Jessica Gonzales filed a section 1983 action after her estranged husband abducted and murdered their three children. Id. at *3-4. As the abduction and murd violated a permanent restraining order issued against the husband 18 days earlier, id., Gonzal claimed that "the town violated the Due Process Clause because its police department had 'a

official policy or custom of failing to respond properly to complaints of restraining order violations' and 'tolerate[d] the non-enforcement of restraining orders by its police officers.'" Id. at *4. The restraining order form given to the estranged husband included a preprinted "NOTICE TO LAW ENFORCEMENT OFFICIALS," which ordered the officials in part to "every reasonable means to enforce this restraining order." Id. at *3. The Court held that Gonzales did not have a legitimate property interest in the enforcement, and therefore the Town did not violate the Due Process Clause. Id. at *12. Despite the forceful language of the notice to law enforcement officials, the Court reasoned that the state of Colorado had not created a clear mandate of police action, noting that it is "common sense that *all* police officers must use some discretion in deciding when and where to enforce city ordinances." Id. at *8 (internal quotation marks and citation omitted). Consequently, Gonzales had no constitutionally protected property interest in the enforcement of the restraining order, and the Town did not violate her procedural due process rights. Id. at *12.

Castle Rock disposes of plaintiffs' procedural due process claim. The plaintiff in Castle Rock arguably had an even stronger property interest in the restraining order, as it was permanent restraining order with strong enforcement provisions. Yet the Supreme Court found that the interest did not rise to the level of constitutional protection. In contrast, the restraining order at issue in this case contains minimal direction to law enforcement, stating merely that the order "is enforceable anywhere in all 50 states, the District of Columbia, all tribal lands, and all U.S. territories and shall be enforced as if it were an order of that jurisdiction by any law enforcement agency that has received the order, is shown a copy of the order, or has verified its existence." Plaintiffs' Exhibit B. In effect, the order requires its own enforcement by the Oakland Police Department without mentioning the means or extent of the enforcement. According to the Supreme Court, not even the "every reasonable means" language in the Gonzales restraining order could create a protected property interest. Because plaintiffs do not have a protected property interest in the protective order, the procedural due process clause is not even at issue.

**3.     First Amendment Claim**

1    The City did not violate plaintiffs' First Amendment rights as a matter of law. Plaintiffs
2    were always free to assemble, associate, and practice their religion at Canaan. The City never
3    disrupted any of these rights; instead, according to the complaint, it avoided taking action.
4    Plaintiffs' First Amendment claim is, in effect, the same as their substantive due process
5    claim: the police violated their rights by failing to act. As is explained above, such a claim is
6    foreclosed by DeShaney.

### 4. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment "directs that all persons similarly circumstanced shall be treated alike." Plyler v. Doe, 457 U.S. 202, 216 (1982) (internal quotation marks and citation omitted). "There is a constitutional right . . . to have police services administered in a nondiscriminatory manner–a right that is violated when a state actor denies such protection to disfavored persons." Estate of Macias v. Ihde, 219 F.3d 1018, 1028 (9th Cir. 2000).

Because the pleading standard applied to plaintiffs' section 1981 claim also applies to allegations of an equal protection violation, plaintiffs have stated an equal protection claim. Plaintiffs allege that the police treated them differently because of their race, and that such differential treatment was the result of a municipal policy. These allegations are sufficient under Rule 8(a)(2) to state a claim.

### C. Section 1985(3) Claim

Plaintiffs also claim that all defendants conspired to violate their civil and constitutional rights, in violation of 42 U.S.C.§ 1985(3).

To prove a section 1985(3) conspiracy claim, a plaintiff must show, "*inter alia*, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action' and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993). To state a civil rights conspiracy claim sufficient to survive a motion to dismiss, the plaintiff must plead specific facts to support the existence of the alleged conspiracy. See Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989); see

8

also Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient"). Plaintiffs' allegations do not satisfy this pleading standard. The complaint consists mostly of conclusory assertions of conspiracy. See Complaint ¶ 21 ("each of the individually named defendants su in this complaint at all times relevant to this action were agents, cohorts, of the remaining defendants"). Plaintiffs rely entirely on the allegation that in September 2004 defendant Claiborne told police who had been called to Canaan that they "had no jurisdiction inside the church because of the principle of separation of church and state, and the responding City officers agreed with Claiborne and did nothing, claiming it was their policy and practice not interfere with such matters." Plaintiffs' Opposition Brief at 14.

The most that this allegation shows is that it was the City's practice not to interfere wi church matters, not that there is a conspiracy between defendants and the City to violate plaintiffs' civil rights. Furthermore, there are no factual allegations, other than the Septembe 2004 statement by defendant Claiborne, of any interactions between the City and the individu defendants. Because plaintiffs rely entirely on conclusory allegations, they have failed to adequately plead a conspiracy. See Olsen v. Idaho State Bd. Of Medicine, 363 F.3d 916, 929 (9th Cir. 2004) (holding that a complaint "devoid of any discussion of an agreement amongst the defendants failed to state a civil rights conspiracy claim).

Plaintiffs have also failed to plead a conspiracy based on class-based invidious discriminatory intent. In their opposition they claim the conspirators intended to stop plaintiffs' efforts to have female church trustees and recruit Hispanic church members. Ther is no allegation, however, that even remotely suggests the police were aware of plaintiffs' efforts and, even if they were, that they would be against such efforts. And in their oppositio and supporting declarations plaintiffs do not suggest that they could in good faith make such allegations.

Accordingly, the Court must grant the City's motion for judgment on the pleadings as plaintiffs' section 1985(3) claim without leave to amend.

**CONCLUSION**

9

1.      The City's motion for judgment on the pleadings on plaintiffs' 42 U.S.C. section 1981 claim is DENIED;

2.      The City's motion for judgment on the pleadings on plaintiffs' 42 U.S.C. section 1983 claim for violation of substantive and procedural due process and for violation of the First Amendment is GRANTED without leave to amend;

3.      The City's motion for judgment on the pleadings on the Equal Protection claim is DENIED;

4.      The City's motion for judgment on the pleadings on the section 1985(3) claim is GRANTED without leave to amend; and

5.      The parties shall appear for an initial case management conference at 8:30 a.m. on August 19, 2005.

**IT IS SO ORDERED.**

Dated: July 21 , 2005

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE