IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REVEREND ANTHONY MAJORS and ANNA MAJORS,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF OAKLAND, et al.,<br><br>    Defendants | No. C-05-0061 CRB (MEJ)<br><br>**REPORT AND RECOMMENDATION RE: CONTEMPT PROCEEDINGS** |

## I. INTRODUCTION

This suite was originally brought for civil right violations allegedly occurring in the workplace. This case settled on July 6, 2005, before this Court. Currently pending before the Court is Defendants' Motion to Enforce Settlement Agreement, filed on March 22, 2006. After careful consideration of the parties' papers, oral arguments heard at the May 4, 2006 hearing, relevant statutory and case law authority, and good cause appearing, the Court hereby certifies this matter for contempt proceedings.

## II. BACKGROUND

**A. PROCEDURAL BACKGROUND**

On January 5, 2005, Plaintiff filed a Complaint for various civil rights violations.

On July 6, 2005, the case settled before Magistrate Maria-Elena James.

On August 23, 2005, the Court held a further settlement conference.

On March 22, 2006, Defendant filed a Motion to Enforce Settlement Agreement and Request for an Order to Show Cause along with the declarations from Josette D. Johnson, Bruce A. McIntosh, and Gloria Herbert.

On March 24, 2006, the Honorable Charles R. Breyer referred this matter to this Court for a Report and Recommendation.

On April 13, 2006, Plaintiff submitted an *exparte* extension of time for the opposition.

On April 17, 2006, without Court approval Plaintiff submitted an opposition along with the declaration of Dorothy Guillory.

On April 18, 2006, without Court approval Plaintiff submitted the declarations of Mary Woodson, Robert Woodson, Cylinda Thomas.

On April 19, 2006, Plaintiff submitted objections to Defendants evidence.

On April 24, 2006, Defendants submitted a reply along with the declarations of Thomas E. Fraysse and John Patton.

On May 1, 2006, Defendants submitted a declaration of Bruce A. McIntosh.

On May 4, 2006, the Court heard a hearing on the matter. Dorothy D. Guillory appeared on behalf of Plaintiffs, and Thomas E. Fraysse, Edward J. Rodzewich, Bruce A. McIntosh, Christopher Kee appeared on behalf of Defendants.

On May 17, 2006, Defendants submitted a supplemental declaration of Gloria Herbert.

On May 23, 2006, Plaintiff submitted the declaration of Dorothy Guillory

On May 30, 2006, Defendants submitted a response to the declaration of Dorothy Guillory.

On June 5, 2006, Plaintiff submitted a response Re: Accounting by Anthony Majors.

On June 6, 2006, Defendants submitted the declaration of Gloria Herbert in opposition to

Accounting.

**B. FACTUAL BACKGROUND**

Plaintiffs sued the City of Oakland for civil rights violations. The suit also named individual defendants, all of whom are members of the church where Reverend Anthony Majors ("Rev. Majors") was the pastor. It appears that this case arises out of an employment dispute between Rev. Majors, the former pastor of Canaan Christian Church and the church membership who desired to terminate Rev. Majors' employment. The individual church members filed a cross-action, attempting to protect the assets of the church from Plaintiffs.

As a result of the settlement conference, both plaintiffs' claims against the individual parties and Canaan's counterclaims were resolved. Defendants agreed to pay Plaintiffs $95,000 in exchange for Rev. Majors resignation as pastor no later than August 15, 2005; the return of all church property in his possession, custody or control; waiver of all claims against the church; "payment shall constitute and be in lieu of any and all compensation that the Majors claim or might otherwise receive as a result of their activities or relationship with Canaan;" and Plaintiffs agreed not to contest Defendants' third party complaint for declaratory relief. (*See* Johnson Decl., Exhibit B.) Although the settlement agreement was not reduced into writing until after the settlement conference, the parties executed the agreement with an effective date of July 6, 2005.

When Defendants entered the church property on August 15, 2005, the mailman delivered Bank of America closing statements showing that the accounts had been closed on August 11, 2005. (Herbert Declaration ¶ 2.) Defendants did not know the church had a Bank of America Account. *Id*. It was out of pure chance that Defendants learned of the new bank account. *Id*. Defendants inquired of the Bank of America for copies of the cancelled checks, but were informed they needed authorization from Rev. Majors. *Id*. Defendants subpoenaed the records because Rev. Majors refused to cooperate. *Id*.

In addition to Bank of America statements, Defendants were also surprised not to find items of personalty, which Plaintiffs agreed to return. These items included remote electric gate openers, keys, and a computer. *Id*. Based on the missing personalty items and the Bank of America bank account statements, Defendants believed Rev. Majors had not returned church property and, thus

refused to pay the settlement funds.

As a result of this dispute, this Court held a further settlement conference on August 23, 2005. (Herbert Decl., Exhibit A at 12.) The dispute centered around whether Rev. Majors turned over all the church property. *Id*. Thus, the Court placed Rev. Majors on the record, under oath, to testify under penalty of perjury that all the church belongings had in fact been turned over. *Id*. Under oath, Rev. Majors represented that he turned over all church property that was in his possession and control. *Id*. at 13. With the understanding that Rev. Majors had turned over all church property that was either in his possession or control; including all account information, bank accounts, money that was in that bank account, Defendants tendered the settlement payment. *Id*.

Defendants independent research revealed that prior to the settlement conference on July 6, 2005, and without informing the church members and without authorization of the true church board, Rev. Majors borrowed $60,000 secured by the church reality located in Oakland. (Johnson Declaration, Exhibit F at 24 - 27, 98 - 100.) After the lender fees were paid out of the proceeds of the loan, $52,265.62 was deposited into a new Bank of America checking account opened in the Church's name by Rev. Majors in June 2005. (Johnson Decl., Exhibit C, D, E.) The loan closed on June 22, 2005, five days before the church members recorded a lis pendens. However, this bank account and loan were never disclosed before, during, or after settlement negotiations.

The Bank of America statements showed that the very next day after the settlement conference, July 7, 2005, a series of checks were drawn against the new bank account holding the loan proceeds. (Johnson Declaration., Exhibit C.) Rev. Majors received checks for "back pay, current pay, and severance package" pay in the amount of $32,000. *Id*. Another $11,200 of church funds were paid for Rev. Majors' income tax withholdings and social security taxes, although as a pastor he is exempt from the latter. (Johnson Decl., Exhibit C at 34-72; Exhibit G; Declaration of Gloria Herbert ¶ 4.) Another $3,000 of church funds were paid to others aligned with Plaintiffs as "love offerings." (Johnson Decl., Exhibit C at 34-72; Exhibit G.) The payments ended when the accounts were closed with zero balances on August 11, 2005, just days before Rev. Majors departed the church. (Johnson Decl., Exhibit C at 3-5.)

## III. DISCUSSION

**A. Legal Standard**

Pursuant to 28 U.S.C. § 636(e), a magistrate may certify to the district court facts possibly constituting contempt. 28 U.S.C. § 636(e) (2005). The following acts or conduct constitute contempt: "(1) disobedience or resistance to any lawful order, process, or writ; (2) misbehavior at a hearing or other proceeding, or so near the place thereof as to obstruct the same; (3) failure to produce, after having been ordered to do so, any pertinent document" and (4) "any other act or conduct which if committed before a judge of the district court would constitute contempt of such court." *Id*. Upon certification of such facts, any person whose behavior is brought into question under 28 U.S.C. § 636 (e) may be ordered to appear before a district court judge to show cause why he should not be held in contempt by reason of the facts so certified. *Id.*

**B. Application to the Case Bar**

As an initial matter, there is no dispute that the district court retained jurisdiction to enforce the settlement agreement. Therefore, this issue is not addressed.

At the hearing, Plaintiffs did not deny the existence of the church loan. There is also no dispute that at no point during the settlement negotiations did Plaintiffs disclose the existence of the loan proceeds. However, Plaintiffs' attorney attempted to make a distinction between "settling church members" and "non settling church members." (Plaintiffs' Opposition at 5.) Plaintiffs claim that after the "non-settling church members found out that Rev. Majors would be resigning, they voted to disburse loan funds the way they saw fit." *Id*. Rev. Majors cashed the checks before receiving a written settlement agreement. *Id*.

This Court has never heard of a distinction between "settling church members" and "non settling church members" prior to this hearing. The Court finds this a simple a play on semantics in an effort to avoid what is shown by the record. In addition, it is clear from the hearing that Rev. Majors cashed the checks after the matter was settled on the record. The mere technicality of not having a written settlement agreement is without merit. Rev. Majors knew from the settlement

5

negotiations, the terms placed on the record, and the settlement agreement that he signed that he was receiving $95,000 in lieu of any and all compensation that the Majors claim or might otherwise receive as a result of their activities or relationship with Canaan." (Johnson Decl., Exhibit B, Agreement (c).) There is no good argument that could possibly excuse or even remotely explain Rev. Majors' conduct. He simply violated the settlement agreement.

In addition, Rev. Majors blatantly lied to the Court at the further settlement conference held on August 23, 2005. The dispute centered around whether Rev. Majors turned over all the church property. Thus, the Court placed Rev. Majors on the record, under oath, to testify under penalty of perjury that all the church belongings had in fact been turned over. Under oath, Rev. Majors represented that he turned over all church property that was in his possession and control. With the understanding that Rev. Majors had turned over all church property that was either in his possession or control; including all account information, bank accounts, money that was in that bank account, Defendants tendered the settlement payment. At the hearing on May 4, 2006, Plaintiffs' attorney represented to this Court that Rev. Majors did not in fact have any money at the August 23, 2005, hearing because he had spent it. According to Plaintiffs' attorney, Rev. Majors did not lie because he had no money at the very moment. This argument is ridiculous. Rev. Majors' conduct not only violated the spirit of the settlement agreement but also the letter of the agreement. It is without question Rev. Majors conduct is unexcusable.

Outraged by Rev. Majors behavior, this Court Ordered that all $60.000 of the loan money be returned to the church coffers along with an accounting of any legitimate expenditures. The Court received a post hearing declaration from Plaintiffs' attorney. It appears that Rev. Majors has "decided not to repay the monies he received from third-party members of Canaan Christian Covenant Church." Post-Hearing Decl. Guillory at 3. Accordingly, the Court certifies this facts for contempt proceedings.

## IV. CONCLUSION

It is the Court's recommendation that the Defendants be awarded 60,617.47 to retire the loan and $3,335.34 to reimburse the church for interest and penalties associated with the loan. (Herbert Decl., ¶ 5 and 9.) In addition, the Court recommends that Defendants be awarded costs and attorneys fees in the amount of $27,741.10. (*See* Declarations of Johnson and McIntosh.) Lastly, the Court recommends that Plaintiffs' be held in contempt until all the monies are paid in full.

Pursuant to Fed.R.Civ.P. 72, a party may serve and file objections to this Report and Recommendation within 10 days after being served with a copy of said report.

**IT IS SO ORDERED.**

Dated: August 4, 2006

MARIA-ELENA JAMES
United States Magistrate Judge